UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
*Electronically Filed*

| | | |
|---|---|---|
| JOSHUA HAYES | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:23-CV-671-CHB-CHL |
| | ) | |
| GORDON FOOD SERVICE, INC. and | ) | |
| UNIVERSAL PROTECTION SERVICE, LLC | ) | |
| d/b/a ALLIED UNIVERSAL SECURITY | ) | |
| SERVICES | ) | |
| | ) | |
| Defendants | ) | |
| and | ) | |
| GORDON FOOD SERVICE, INC. | ) | |
| | ) | |
| Third-Party Plaintiff | ) | |
| v. | ) | |
| ECLIPSE ADVANTAGE LLC | ) | |
| Serve: CT Corporation System | ) | |
| 306 W. Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, Kentucky 40601 | ) | |
| Third-Party Defendant | ) | |
| and | ) | |
| COREY ROWLAND | ) | |
| Serve: Bullitt County Detention Center | ) | |
| 1671 South Preston Hwy | ) | |
| Shepherdsville, Kentucky 40165 | ) | |
| Third-Party Defendant | ) | |

# THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff, Gordon Food Service, Inc. ("GFS"), states as follows for its Third-Party Complaint against Eclipse Advantage LLC ("Eclipse") and Corey Rowland:

## PARTIES

1. GFS is a Michigan corporation, licensed to do business in Kentucky, with its principal place of business in Michigan.

2. Third-Party Defendant Eclipse is a Delaware limited liability corporation registered to do business in Kentucky. Upon information and belief, Eclipse's sole member is Eclipse Advantage Holdings, LLC, and the members of Eclipse Advantage Holdings, LLC are: LaSalle Capital Group IIA, L.P., a Delaware limited partnership, Marquette Capital Fund II, LP, a Delaware limited partnership, OZ Staffing, LLC, a New Jersey limited liability company, and Steve Parks, an Illinois citizen.

3. Third Party Defendant Corey Rowland is a Kentucky citizen that currently resides in the Bullitt County Detention Center in Shepherdsville, Kentucky.

## JURISDICTION AND VENUE

4. The Court has original jurisdiction over the original action filed by Plaintiff Joshua Hayes pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds $75,000 and the action is between citizens of different states within the meaning of 28 U.S.C. §1332 (a)(1). (*See* DN 1, Notice of Removal.)

5. This Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. §1367, as the claims set forth by GFS are part of the same case or controversy under Article III of the United States Constitution. (*Id.*)

6. The Court also has original jurisdiction over this Third-Party Complaint as GFS is a citizen of a different state than both Eclipse and Rowland and the amount in controversy exceeds $75,000 with the meaning of 28 U.S.C. §1332 (a)(1).

7. The Court has personal jurisdiction over Eclipse pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and KRS § 454.210 because Eclipse transacts business in the Commonwealth of Kentucky, Eclipse contracted to supply services in this Commonwealth, and because Eclipse caused tortious injury by an act or omission in the Commonwealth of Kentucky. Further, this Court has personal jurisdiction over Eclipse because there is a direct nexus between the services Eclipse contracted to provide in this Commonwealth and the wrongful acts alleged in Plaintiff's Amended Complaint and in this Third Party Complaint.

8. The Court has personal jurisdiction over Rowland as he is a Kentucky citizen and caused tortious injury by an act in the Commonwealth of Kentucky.

9. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to all claims set forth in this Third-Party Complaint occurred in the Western District of Kentucky.

**FACTS**

10. In May 2017, Eclipse entered into a Service Agreement with GFS to supply workers to unload, break down, and process pallets of freight at the several GFS distribution facilities across the country, including the GFS distribution facility in Shepherdsville, Kentucky (the "GFS distribution facility"). At certain times, this Service Agreement was extended through amendment and/or by agreement.

11. The unloading, breaking down, and processing of pallets of freight was and is a regular and recurrent part of GFS's operations at the distribution facility.

12. Pursuant to the Service Agreement, Eclipse was "responsible to direct, control and supervise all [Eclipse] employees working at any Facility," including the GFS distribution facility. (Service Agreement at ¶ 5.) "This includes, but is not limited to, [Eclipse's] hiring, evaluating, compensating, supervising, disciplining and discharging [Eclipse's] employees." (*Id*.)

13. Eclipse was required to have a "supervising representative at the relevant Facility to control [its] employees whenever [it] has employees at any Facility." (*Id*.)

14. Relatedly, GFS granted Eclipse a License to Access Space at the GFS distribution facility, which provides that Eclipse was "responsible for the direction, control, and supervision of its employees working at the Facilities, subject to GFS's general authority to manage and control the Facilities, the Space, and its business operations. [Eclipse] will have authority, responsibility and control over all personnel decisions involving its employees, including hiring, evaluating, compensating, supervising, disciplining and dismissing same. [Eclipse] is responsible to ensure compliance with all statutory and regulatory requirements concerning or affecting its employees." (License to Access Space at ¶ 5.) At certain times, this License was extended by amendment and/or agreement.

15. Eclipse also agreed that it was fully responsible for ensuring the safety of its employees. Indeed, Eclipse "assume[d] full and independent responsibility for the safety and health of his/her employees when working on projects contracted for . . . **It is understood and agreed that Gordon Food Service will <u>not</u> exercise control or direction of contractor personnel for safety compliance or otherwise and such contractor employees will not be deemed to be Gordon Food Service employees for any purpose.** [Eclipse] shall be responsible for identifying occupational safety and health deficiencies and initiating appropriate corrective action on their own initiative." (Eclipse Safety Program at p. 6.) (emphasis in original); (*see also*

4

*id*. at p. 9, § D.) (Eclipse "shall assume full and independent responsibility for the safety and health of his employees when working on projects contracted for, and also agrees to perform in full compliance with all applicable OSHA standards and requirements.")

16. Eclipse also agreed to establish "workplace safety policies prior to sending any [Eclipse] employee to any facility and to maintain these policies during the term of this Agreement (including any extensions). [Eclipse] further agrees to annually train and maintain records that it has trained, all [Eclipse] employees regarding [Eclipse's] . . . workplace safety policies prior to allowing the [Eclipse] employee to work at any Facility." (Eclipse Service Agreement at ¶ 8.)

17. Finally, Eclipse agreed to indemnify GFS for (1) any claims related to or connected with Eclipse's performance, including its employee's performance, or failure to perform or any breach of its contractual relationship with GFS; (2) any claims in any way related or connected with any claim an Eclipse employee is an employee of GFS; (3) any claims in connection with Eclipse employees' use or presence at the Facility or common areas; and (4) any claims of bodily injury or death resulting from the negligent act or omission by Eclipse or its employees related to safety while on GFS's premises. (Eclipse Service Agreement at ¶¶ 7, 9; License to Access Space at ¶ 8; Eclipse Safety Program at Appendix B, ¶ 1.)

18. On December 7, 2023, Plaintiff filed a Complaint against GFS asserting negligence claims arising out of Eclipse employee Corey Rowland shooting Plaintiff and another Eclipse employee while they were walking to their respective vehicles after completing a shift as Eclipse Freight Handlers at the GFS distribution facility.

19. Rowland, Plaintiff, and Puckett were all Eclipse employees at the time of the shooting.

20. Upon information and belief, the shooting took place after an altercation between Rowland and the other Eclipse employee during their shift as Eclipse Freight Handlers.

21. Eclipse failed to provide a supervising representative at the GFS distribution facility during all times relevant to Plaintiff's Complaint or this Third-Party Complaint.

22. The shooting occurred in the "Eclipse Parking Lot," which was a parking area used exclusively by Eclipse employees.

23. Pursuant to the License for Access to Space, GFS designated this parking area for Eclipse's exclusive use. Eclipse employees could not park anywhere else on the GFS premises, and no GFS employee could park in the Eclipse Parking Lot.

24. Plaintiff's claims are the types of claims Eclipse agreed to defend and indemnify GFS.

25. GFS denies that is it liable for any allegations, claims, or injuries asserted by Plaintiff in his Complaint or any amendments to the Complaint.

**COUNT I – CONTRACTUAL INDEMNITY AGAINST ECLIPSE**

26. GFS incorporates by reference all previous averments of this Third-Party Complaint as if fully stated in this paragraph.

27. By virtue of its contract with GFS, Eclipse was required to (1) control and supervise its employees, (2) assume full and independent responsibility for the safety and health of its employees, (3) establish safety policies, and (4) comply with all statutory and regulatory requirements concerning or affecting its employees.

28. Eclipse agreed to indemnify GFS for (1) any claims related to or connected with Eclipse's performance, including its employee's performance, or failure to perform or any breach of its contractual relationship with GFS; (2) any claims any way related or connected with any

6

claim an Eclipse employee is an employee of GFS (i.e. claims of respondeat superior or vicarious liability for Rowland's conduct); (3) any claims in connection with Eclipse employees' use or presence at the Facility or common areas; and (4) any claims of bodily injury or death resulting from the negligent act or omission by Eclipse or its employees related to safety while on GFS's premises. (Eclipse Service Agreement at ¶¶ 7, 9; License to Access Space at ¶ 8; Eclipse Safety Program at Appendix B, ¶ 1.)

29. The basis of Plaintiff's action relates to the conduct of Eclipse employees that were under the control and supervision of Eclipse, while such employees were at the GFS distribution facility during their performance of work under the Services Agreement (as amended and extended by agreement) between GFS and Eclipse, and Plaintiff's alleged injuries occurred on a part of the premises that was exclusively licensed to Eclipse.

30. Accordingly, GFS is entitled to contractual indemnity from Eclipse for the entire amount of any judgment entered against GFS in favor of Plaintiff.

31. GFS is also entitled to attorney fees and costs incurred from the defense of Plaintiff's Complaint.

## COUNT II – COMMON LAW INDEMNITY AGAINST ECLIPSE

32. GFS incorporates by reference all previous averments of this Third-Party Complaint as if fully stated in this paragraph.

33. GFS is not liable nor was it negligent for any of the claims asserted by Plaintiff, but if it is adjudged that GFS was negligent, then GFS's negligence would be secondary and passive, and the negligence of Eclipse, and/or its employees or agents, including, but not limited to, Rowland, Puckett, Plaintiff, and Eclipse's supervisors, if any, would be primary and active; therefore GFS is entitled to common law indemnity from Eclipse.

34. For purposes of this claim, Eclipse owed certain duties to those persons exposed to or interacting with its employees at GFS, including co-employees such as Plaintiff, to hire, retain, train, and supervise people fit to perform their job duties and who would not pose a danger or safety risk to others present on the GFS premises.

35. Eclipse breached these common law duties as well as breached contractual duties regarding the hiring, retention, training, and supervision of its employees, including but not limited to Corey Rowland, who interacted with co-workers, including Plaintiff.

36. Eclipse's negligence in this regard was a more primary or active cause of Plaintiff's alleged injuries and damages than the negligence alleged against GFS, thereby entitled GFS to common law indemnity against Eclipse.

### COUNT III—APPORTIONMENT AGAINST ROWLAND AND ECLIPSE

37. GFS incorporates by reference all previous averments of this Third-Party Complaint as if fully stated in this paragraph.

38. While denying any liability to Plaintiff, GFS pleads that, under Kentucky law, any fault must be apportioned with the fault of other parties, persons, or entities who contributed to cause the damages claimed.

39. Rowland is liable for the allegations asserted by Plaintiff in his Complaint as he shot Plaintiff and caused the injuries alleged.

40. Eclipse is liable for the allegations asserted by Plaintiff in his Complaint as it is vicariously liable for its employees' tortious conduct and responsible for the hiring, training, supervising, and retaining of its employees.

41. GFS is entitled to permit the fact finder at trial to apportion fault to Rowland and Eclipse in accordance with KRS § 411.182.

**WHEREFORE**, Defendant/Third-Party Plaintiff, Gordon Food Service, Inc., demand as follows:

1. For Plaintiff's Complaint against it to be dismissed with prejudice;

2. For judgment against Eclipse Advantage LLC by way of indemnity for any settlement and/or judgment Plaintiff obtains from GFS;

3. For a declaratory judgment against Eclipse Advantage LLC providing that it is responsible to defend and indemnify GFS for Plaintiff's Complaint and pay for all costs and fees GFS expends;

4. Apportionment of fault among all parties, including Corey Rowland and Eclipse Advantage LLC in accordance with KRS § 411.182;

5. Leave to amend its third-party claim as necessary;

6. For the costs expended herein, including attorneys' fees;

7. Trial by jury; and

8. For any other remedies the Court deems necessary and just.

                                                Respectfully submitted,

/s/ Christopher S. Zelli
Bradley A. Case (#86000)
Christopher S. Zelli (#98651)
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
(502) 540-2300
Fax (502) 585-2207
bradley.case@dinsmore.com
christopher.zelli@dinsmore.com
*Counsel for Defendant
Gordon Food Service, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and served a copy of same via electronic mail on the following counsel of record:

| | |
|---|---|
| Jason D. Swinney | Universal Protection Service, LLC |
| Morgan & Morgan, Kentucky PLLC | d/b/a Allied Universal Security Services |
| 209 East Main Street, Suite 400 | Serve: Corporation Service Co. |
| Louisville, KY 40202 | 421 West Main Street |
| jswinney@forthepeople.com | Frankfort, KY 40601 |
| *Counsel for Plaintiff* | |

/s/ Christopher S. Zelli
*Counsel for Defendant*
*Gordon Food Service, Inc.*